**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| PATTIE POKORNY AND CHRISTOPHER POKORNY (H/W),<br><br>               Plaintiffs,<br><br>   v.<br><br>ELI LILLY AND COMPANY, an Indiana Corporation,<br><br>               Defendant. | Case No. 4:14-cv-02960 |

## PLAINTIFFS' MOTION TO COMPEL AND MEMORANDUM OF LAW IN SUPPORT

## <u>TABLE OF CONTENTS</u>

I.      Introduction ............................................................................................. 5

II.     The Discovery Requests and Objections at Issue.......................................... 6

        A.      Plaintiffs Requested Production of Lilly's Sales Representatives'
                Custodial Files and the Promotional Materials Shown to Plaintiff
                Patti Pokorny's Doctors. .................................................................. 6

        B.      Plaintiffs Narrowed Their Requests Based on Information Lilly
                Produced and in Response to Lilly's Objections. ............................... 8

        C.      Lilly Continued to Object to the Narrowed Request........................... 9

III.    Legal standard ......................................................................................... 9

IV.     Argument ............................................................................................... 10

        A.      The Discovery Sought Is Necessary and Relevant to the Parties'
                Claims and Defenses. ..................................................................... 10

        B.      Lilly Has Not Demonstrated Undue Burden. .................................... 14

        C.      Lilly's Proposed Search Terms Would Not Capture Relevant
                Information. ................................................................................... 15

        D.      Courts Routinely Order Production of Complete Sales
                Representative Custodial Files. ....................................................... 16

V.      Conclusion ............................................................................................. 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Actos (Pioglitazone-Prods. Liab. Litig.)*,
  No. 6:11-MD-2299, 2013 WL 4776346 (W.D. La. Sept. 3, 2013)......................................17

*Baker v. Bayer Healthcare Pharm. Inc.*,
  No. 13-CV-00490, 2014 WL 5513854 (N.D. Cal. Oct. 31, 2014).........................................17

*Cunningham v. Smithkline Beecham*,
  255 F.R.D. 474 (N.D. Ind. 2009) ................................................................................. 12, 17

*In re Enron Corp. Sec., Derivative & ERISA Litig.*,
  623 F. Supp. 2d 798 (S.D. Tex. 2009)...............................................................................9

*Export Worldwide, Ltd. v. Knight*,
  241 F.R.D. 259 (W.D. Tex. 2006) .....................................................................................10

*Gauthier v. Union Pac. R.R. Co.*,
  No. 1:07-CV-12, 2008 WL 2467016 (E.D. Tex. June 18, 2008)...........................................10

*Hexum v. Eli Lilly & Co.*,
  No. 2:13-CV-02701, 2015 WL 4064633 (C.D. Cal. June 19, 2015) .....................................10

*In re Levaquin Products Liability Litigation*,
  No. 08-1943, 2009 WL 10424741 (D. Minn. Nov. 25, 2009)................................................17

*Saavedra v. Eli Lilly & Company*,
  No. 2:12-cv-9366 (C.D. Cal. Aug. 17, 2015), Dkt. 187 .......................................................16

*Schaefer-LaRose v. Eli Lilly & Co.*,
  663 F. Supp. 2d 674 (S.D. Ind. 2009) ...............................................................................18

*Shipley v. Forest Labs.*,
  No. 1:06–cv–00048, 2014 WL 4270939 (D. Utah Aug. 29, 2014) .......................................18

*Smith v. DeTar Hosp. LLC*,
  No. V-10-83, 2011 WL 6217497 (S.D. Tex. Dec. 14, 2011) ...............................................10

*Spiegelberg Mfg., Inc. v. Hancock*,
  No. 3-07-CV-1314, 2007 WL 4258246 (N.D. Tex. Dec. 3, 2007).......................................10

*Vann v. Mattress Firm*,
  No. H-12-3566, 2014 WL 1365943 (S.D. Tex. Apr. 7, 2014)........................................10, 14

**Other Authorities**

Fed. R. Civ. P. 26(b) .......................................................................................................... 10, 14

Fed. R. Civ. P. 34(a)(1) ...........................................................................................................14

## I.    INTRODUCTION

Plaintiffs Patti and Christopher Pokorny respectfully request that the Court compel Defendant Eli Lilly and Company ("Lilly") to produce the time-delimited custodial files of certain sales representatives who communicated with Plaintiff Patti Pokorny's doctors regarding Lilly's prescription drug Cymbalta.

In this case, Plaintiffs have alleged that Lilly, despite having full knowledge of the risks, did not adequately warn patients or doctors that stopping Cymbalta treatment could cause severe withdrawal symptoms, and did not provide patients or doctors with guidance on how to safely stop taking Cymbalta. The case is in active discovery in advance of a fact discovery cut-off date of January 7, 2016. *See* Scheduling/Docket Control Order, Dkt. 18 (Jan. 20, 2015).

Lilly's discovery responses show that Lilly's sales representatives visited three of Plaintiff Patti Pokorny's doctors to promote Cymbalta over 300 times.[1] In order to discover what Lilly's sales representatives communicated to Plaintiff Patti Pokorny's doctors, Plaintiffs asked Lilly to produce the time-delimited custodial files of those sales representatives. Lilly has refused to produce these files, instead suggesting use of narrow search terms to identify responsive documents—***despite the fact that Lilly and its lawyers have not yet contacted the Lilly sales representatives involved nor reviewed a single complete sales representative custodial file***. Plaintiffs now seek an order compelling production of the custodial files.

---

[1] Lilly has noted the depositions of five of Plaintiff Patti Pokorny's doctors: Dr. Luciana De Saibro, Dr. Raul Sepulveda, Dr. Fatima Ibrahim, Dr. Kathryn Ziegler, and Dr. Jessica Anderson. This motion concerns sales representatives' visits to Drs. De Saibro, Ibrahim, and Ziegler to promote Cymbalta. No sales representatives visited Dr. Sepulveda. Lilly recently noted the deposition of Dr. Jessica Anderson. Plaintiffs served discovery requests on Lilly concerning Dr. Anderson on September 18, 2015, asking Lilly to identify any sales representatives who visited Dr. Anderson to promote Cymbalta.

## II.     THE DISCOVERY REQUESTS AND OBJECTIONS AT ISSUE

**A.     Plaintiffs Requested Production of Lilly's Sales Representatives' Custodial Files and the Promotional Materials Shown to Plaintiff Patti Pokorny's Doctors.**

Plaintiffs' motion to compel discovery involves two related requests for production: the first seeking the custodial files of the Lilly sales representatives who called on Plaintiff Patti Pokorny's doctors to promote Cymbalta, and the second seeking the materials the Lilly sales representatives showed or gave to Plaintiff Patti Pokorny's doctors. The first request may be inclusive of the second in that the custodial files may contain the materials that the Lilly sales representatives used to promote Cymbalta to Plaintiff Patti Pokorny's doctors. Plaintiffs' requests and Lilly's responses are reproduced below:

**REQUEST FOR PRODUCTION NO. 91:** Please produce the custodial file, including but not limited to employment agreements, termination agreements, performance reviews, self-reviews, W-2s, and bonus amounts, for each pharmaceutical representative who called upon the following to discuss, present, or promote CYMBALTA:

Dr. Luciana De Saibro
Snow Canyon Clinic
272 East Center Street, Suite 201
Ivins, UT 84738
(435) 251-3950

Dr. Raul Sepulveda
KSF Orthopaedic Center, P.A.
17270 Red Oak Drive, Suite 200
Houston, TX 77090
(281) 440-6960

Dr. Fatima Ibrahim
Crescent Neurology
800 Peakwood Drive, Suite 6-D
Houston, TX 77090
(281) 586-8800

Dr. Kathryn Ziegler
Cypress Physician Association
1250 Cypress Station Drive, Suite B
Houston, TX 77090
(281) 537-0300

(Pls. Patti & Christopher Pokorny's First Set of Reqs. for Produc. of Docs. to Def. Eli Lilly & Company, Feb. 18, 2015.)

### RESPONSE TO REQUEST FOR PRODUCTION NO. 91:

Lilly objects to this Request as overly broad and unduly burdensome as to time and scope. Lilly also objects to this Request as it is not limited to documents relating to Cymbalta or any alleged discontinuation-emergent adverse events potentially arising from Cymbalta treatment and therefore seeks information that is neither relevant nor likely to lead to the discovery of admissible evidence. To the extent this Request involves confidential personnel information, Lilly further objects to this Request as unduly infringing on the privacy rights of its employees. The precise dollar amounts of Lilly's compensation to its employees and their performance reviews are not relevant to this litigation and Plaintiff's [sic] request would cause undue annoyance and embarrassment to these employees.

(Def.'s First Am. Objections & Resps. to Pls.' First Set of Reqs. for Produc. of Docs., May 12, 2015.)

### REQUEST FOR PRODUCTION NO. 95: Please produce all DOCUMENTS, including but not limited to marketing materials, brochures, sales aids, "slim jims," "skiffs," clinical trials / medical journal articles, PowerPoint presentations, etc., that were given or shown by LILLY pharmaceutical representatives to the following:

- Dr. Luciana De Saibro

- Dr. Raul Sepulveda

- Dr. Fatima Ibrahim

- Dr. Kathryn Ziegler

(Pls. Patti & Christopher Pokorny's First Set of Reqs. for Produc. of Docs. to Def. Eli Lilly & Company, Feb. 18, 2015.)

### RESPONSE TO REQUEST FOR PRODUCTION NO. 95:

Lilly objects to this Request as not limited to documents relating to Cymbalta and to the extent records of any documents or marketing materials given or shown by Lilly pharmaceutical representatives to the above-identified medical professionals are not contained in Lilly's sales database.

Subject to and without waiving its foregoing objections, Lilly responds that the information in its sales database does not indicate which marketing materials or other documents were shown to particular medical professionals.

Def.'s First Am. Objections & Resps. to Pls.' First Set of Reqs. for Produc. of Docs., May 12, 2015.)

**B.    Plaintiffs Narrowed Their Requests Based on Information Lilly Produced and in Response to Lilly's Objections.**

Lilly's initial objections to the production of its employees' custodial files were related to

breadth, burden, relevance, and potential infringement on its employees' privacy. Based on these

objections and on the sales call tracking spreadsheets that Lilly produced on August 24, 2015,

Plaintiffs withdrew their request for four sales representatives because they visited Plaintiff Patti

Pokorny's doctors only after she had stopped taking Cymbalta. In addition, Plaintiffs narrowed

their request for the remaining thirteen custodial files to targeted date ranges, several of which

only span a few months' time.[2]

The full list of the thirteen Lilly sales representatives for whom Plaintiffs request

production of custodial files and the date range requested for each is as follows:

| Lilly Sales Representative | Doctor Visited | Date Range Requested |
|---|---|---|
| Jason Bott | Dr. Luciana De Saibro | October 2004 – November 2005 |
| Susanne Salas | Dr. Fatima Ibrahim | January 2007 – October 2012 |
| Marcus Julien | Dr. Kathryn Ziegler | October 2012 – March 2013 |
| Rosalind Sobsosle | Dr. Kathryn Ziegler | December 2009 – December 2010 |
| Kevin Gray | Dr. Luciana De Saibro | December 2004 – September 2005 |
| Traci Korkowski | Dr. Kathryn Ziegler | July 2009 – September 2011 |
| Brook Finlinson | Dr. Luciana De Saibro | August 2006 – September 2007 |
| Brendan Radomski | Dr. Kathryn Ziegler | June 2011 – September 2011 |
| Nicole Daly | Dr. Kathryn Ziegler | June 2012 |
| Brooke Adams | Dr. Kathryn Ziegler | November 2011 – June 2013 |
| Sarah Lea | Dr. Fatima Ibrahim | October 2004 – November 2004 |

---

[2] These date ranges begin with the earliest date on which the sales representatives called on Plaintiff Patti Pokorny's doctors to promote Cymbalta and end either when the particular doctor was no longer treating Plaintiff or with the representative's last Cymbalta-related sales call.

| Lilly Sales Representative | Doctor Visited | Date Range Requested |
|---|---|---|
| Amelia Jeffries | Dr. Kathryn Ziegler | January 2009 |
| Amy Keel | Dr. Kathryn Ziegler | March 2009 – December 2009 |

Letter from Meredith Gray to Emily Ullman (Sept. 18, 2015), Ex. A.

## C.   Lilly Continued to Object to the Narrowed Request.

Lilly rejected Plaintiffs' narrowed request, insisting on search terms to identify responsive documents in Lilly's possession and proposing a narrow set of search terms for doing so. Email from Emily Ullman to Meredith Gray, *et al.* (Sept. 22, 2015), Ex. B.

Counsel met and conferred by telephone on September 25, 2015. Lilly's counsel acknowledged that (1) they had not yet contacted any of the Lilly sales representatives at issue to determine what discoverable documents they might have; (2) they had not yet assembled or reviewed a single complete sales representative custodial file; (3) they did not know the total volume of documents at issue; (4) they are compiling a "sampling" of some sales representatives' documents in Lilly's possession, but only from email and attachments; and (5) responsive documents may exist in the electronic network files maintained by Lilly and as hard copies maintained by the sales representatives, but were not being included in the sample.

Subsequent to the parties' September 25, 2015 telephonic meet and confer, Plaintiffs suggested that Lilly produce a few complete custodial files as samples for Plaintiffs to review and determine whether search terms would be adequate for the remainder of the custodial files. Letter from Meredith Gray to Emily Ullman (Sept. 25, 2015), Ex. C. Lilly has not responded.

## III.   LEGAL STANDARD

At the discovery stage, "relevancy is construed liberally[.]" *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 623 F. Supp. 2d 798, 838 (S.D. Tex. 2009). The moving party meets its burden to show that "[m]aterials and information are discoverable if they are 'relevant to any party's claim or defense' or if they 'appear [ ] reasonably calculated to lead to the discovery of

admissible evidence.'" *Smith v. DeTar Hosp. LLC*, No. V-10-83, 2011 WL 6217497, at *2 (S.D. Tex. Dec. 14, 2011) (quoting Fed. R. Civ. P. 26(b)(1) and citing *Export Worldwide, Ltd. v. Knight*, 241 F.R.D. 259, 263 (W.D. Tex. 2006)). "Once the moving party establishes that the materials requested are within the scope of permissible discovery, the burden shifts to the party resisting discovery to show why the discovery is irrelevant, overly broad, or unduly burdensome or oppressive, and thus should not be permitted." *Vann v. Mattress Firm*, No. H-12-3566, 2014 WL 1365943, at *1 (S.D. Tex. Apr. 7, 2014) (citing *Spiegelberg Mfg., Inc. v. Hancock*, No. 3-07-CV-1314, 2007 WL 4258246, at *1 (N.D. Tex. Dec. 3, 2007); *Gauthier v. Union Pac. R.R. Co.*, No. 1:07-CV-12, 2008 WL 2467016, at *3 (E.D. Tex. June 18, 2008)).

## IV.    ARGUMENT

### A.    The Discovery Sought Is Necessary and Relevant to the Parties' Claims and Defenses.

In defending similar claims in other Cymbalta withdrawal cases, Lilly has emphasized plaintiffs' doctors' knowledge of Cymbalta. *See, e.g.*, *Hexum v. Eli Lilly & Co.*, No. 2:13-CV-02701, 2015 WL 4064633, at *13-15 (C.D. Cal. June 19, 2015) (in order denying summary judgment, discussing proximate cause and Lilly's evidence of prescribing doctor's knowledge of Cymbalta's risks). In the present case, Lilly has noticed depositions of five of Plaintiff Patti Pokorny's doctors. Before Lilly takes these doctors' depositions, Plaintiffs seek discovery of what Lilly communicated to these doctors about Cymbalta. Lilly has produced sales call tracking spreadsheets showing that seventeen different Lilly sales representatives visited three of Plaintiff Patti Pokorny's doctors frequently to promote Cymbalta: ***314 times*** during the period of time relevant to Plaintiffs' claims. Plaintiffs seek the production of only thirteen of these sales representatives' custodial files.

Because Plaintiffs' claims focus on what Lilly both did and did not tell patients and their doctors and because Lilly's anticipated defenses focus on the treating doctors' knowledge of Cymbalta and its risks, discovery of Lilly's sales representatives' 300-plus communications with Plaintiff Patti Pokorny's doctors is highly relevant.

Through the meet and confer process, Lilly's counsel stated that the sales call tracking spreadsheets Lilly produced contain ***all*** recorded information about the sales representatives' calls to Plaintiff Patti Pokorny's doctors. Certain entries in these spreadsheets provide some information about promotional items given to the doctors, but the spreadsheets generally do not contain details beyond the date of each call and whether samples were provided. During her deposition, Lilly employee Dr. Madelaine Wohlreich testified that sales representatives would relay much more detailed information to Lilly following field visits:

> Sales reps would let their district rep know, who might tell then somebody in the team, hey, we're getting a lot of questions about or a lot of comments on or a lot of concern about something. So the marketing team would keep abreast of what the sales reps were being asked. Often there'd be questions that they couldn't answer and shouldn't answer because they had to do with something that wasn't directly in the label, but sometimes medical concerns would come to us that way as well.

Wohlreich Dep. 30:10–31:3, *Hagan-Brown v. Eli Lilly and Company*, No. 1:14-CV-01614 (E.D. Va. Apr. 29, 2015) (cross-noticed in the instant action), Ex. D.

In addition to such communications, based on documents that Lilly has produced thus far that describe Lilly's various standard operating procedures, Plaintiffs expect that the custodial files will likely include the following materials that bear directly on the parties' claims and defenses:

- Call notes;

- Field Visit Observation Forms, which managers are required to complete for every field visit;[3]

- Coaching interventions, which were required to be documented in writing whenever possible, including field visit memos, developmental action plans, and follow-ups on coaching items;

- Internal communications sharing general responses to unsolicited questions or clarifications of doctor misperceptions with other field-based personnel, based on activity in the local market; and

- Sales strategy communications pertaining to the local market, such as summaries of key points from a district/area meeting, slides describing a local contest for market-share growth, information regarding a selling approach, or area/district/territory action plans.[4]

These documents are likely to provide specific, highly relevant information about the sales representatives' communications with Plaintiff Patti Pokorny's doctors, as well as a detailed understanding of how Lilly tailored its promotion of Cymbalta to Plaintiff Patti Pokorny's doctors and in the local sales territories. Such information is relevant not only to Lilly's anticipated learned intermediary defense but also to the potential applicability of punitive damages. *See, e.g.*, *Cunningham v. Smithkline Beecham*, 255 F.R.D. 474, 479 (N.D. Ind. 2009) (ordering production of the "complete sales files of any sales representative" who called on the plaintiff's child's doctor within a four-year period, because "[I]f at any time Smithkline knew Paxil posed a risk to pediatric patients but ordered its sales representatives to conceal this information from doctors, the files of the sales representatives are germane to the determination of punitive damages").

---

[3] Plaintiffs assume that these observation forms were shared with the representatives being observed; otherwise, these forms would be in the managers' custodial files. As Plaintiffs note *infra*, they have served discovery requesting the names of the relevant district managers and expect to request production of certain managers' files.

[4] Lilly's standard operating procedures note that sales strategy communications were required to be retained and stored in a designated folder, preferably on a shared drive. Thus, Lilly's electronic network likely contains relevant, discoverable information.

Lilly does not dispute that its employees' custodial files contain discoverable information. Lilly speculates, however, that some of the information in the requested portions of the custodial files is irrelevant because it relates to other Lilly products.[5] But even if the employees' files contain documents related to products other than Cymbalta, these documents are still relevant to Lilly's promotional practices and could reasonably be anticipated to lead to the discovery of admissible evidence. For example, if Ms. Salas, who promoted Cymbalta to one of Plaintiff Patti Pokorny's doctors eighty-one times, also promoted other products, it would be relevant to learn how she addressed the risk of side effects or withdrawal for other products compared to how she addressed such risks for Cymbalta.

Moreover, if Plaintiff Patti Pokorny's doctors discussed with Lilly's representatives withdrawal or other safety-related concerns regarding other products, those communications would also be relevant to the parties' claims and defenses. Documents produced thus far indicate that Lilly trained its sales force to be "reactive" with respect to certain safety issues, using particular "sell sheets" or "leave behinds" only if doctors expressed safety concerns, and to classify doctors as one of four personality types for purposes of sales strategy, which presumably did not change with respect to the product being promoted. Thus, information related to Lilly's employees' communications with Plaintiff Patti Pokorny's doctors and their doctor-specific sales strategies is relevant regardless of the product involved.

Relevance at the discovery stage is construed broadly, and Plaintiffs have sufficiently tailored their request to their claims and Lilly's defenses. Limiting production of these

---

[5] Lilly also speculates that the custodial files will contain irrelevant personnel documents, the production of which would infringe on their employees' privacy. The protective order already entered by the Court protects Lilly and its employees from any such concerns. *See* Stipulation & Protective Order, Aug. 2, 2015, Dkt. 20.

employees' files by specific date ranges is a reasonable and targeted way to discover what and how Lilly's employees communicated to Plaintiff Patti Pokorny's doctors regarding Cymbalta during the time relevant to Plaintiffs' claims.

**B.      Lilly Has Not Demonstrated Undue Burden.**

It is Lilly's burden to demonstrate that the production Plaintiffs request is unduly burdensome. *See Vann*, 2014 WL 1365943 at *1. Because Lilly has not met this burden, it is obligated under the Federal Rules to either produce relevant documents responsive to Plaintiffs' request, or, in the alternative, provide Plaintiffs with a sample by which they can determine whether Lilly's proposed search terms are adequate. *See* Fed. R. Civ. P. 34(a)(1) ("A party may serve on any other party a request within the scope of Rule 26(b) . . to produce and permit the requesting party or its representative to inspect, copy, test, or sample [potentially discoverable] items in the responding party's possession, custody, or control."). Plaintiffs suggested such a sampling approach, but Lilly has not responded. Letter from Meredith Gray to Emily Ullman (Sept. 25, 2015), Ex. C.

During the parties' September 25 telephonic meet and confer, Plaintiffs' counsel requested information on the volume of documents in the custodial files at issue to better assess Lilly's claim of undue burden. Lilly's counsel stated that she has not actually contacted any of the Lilly sales representatives nor reviewed any of the thirteen requested custodial files (in Lilly's possession), and she offered no concrete information of their volume or contents. Thus, Lilly has not demonstrated any factors necessitating the use of search terms to narrow the volume of documents it must review prior to production.

Furthermore, Lilly's response to Plaintiffs' Request for Production No. 95—that its sales database does not indicate which materials were shown to particular doctors—is remarkably inadequate. While Plaintiffs understand that a particular database may not track which materials

14

Lilly's employees showed Plaintiff Patti Pokorny's doctors, Lilly's obligation under the Federal Rules does not end with that database. As Lilly's counsel stated in the parties' September 25 telephonic meet and confer, responsive documents may also exist in the electronic network files, email and attachments, and hard copy files maintained by their employees.

Thus, for both Plaintiffs' Request for Production Nos. 91 and 95, Lilly has not fulfilled its obligations to review and produce documents or, in the alternative, met its burden to show that the requested discovery exceeds the scope of discovery permitted by the Federal Rules of Civil Procedure.

### C.   Lilly's Proposed Search Terms Would Not Capture Relevant Information.

Putting aside the fact that Lilly has failed to demonstrate that its potential burden warrants use of search terms, the search terms Lilly proposes will exclude relevant documents. Lilly's proposed terms would extract an extremely narrow slice of material from Lilly's files, while failing to capture relevant and responsive information. For example, although Lilly bases much of its objections on the idea that documents related to other Lilly products exist in its employees' custodial files, it does not simply propose using "Cymbalta" as a stand-alone search term: instead, it suggests searching for *both* a Cymbalta term *and* a term related to Cymbalta discontinuation. Email from Emily Ullman to Meredith Gray, *et al.* (Sept. 22, 2015), Ex. B. This sort of carefully calibrated search ignores the fact that relevance at the discovery stage includes anything that possibly bears on Plaintiffs' claims or Lilly's defenses.

Documents such as coaching interventions and sales strategy communications, despite their clear relevance to the claims and defenses in this matter, would likely be excluded by the narrow search terms Lilly proposed, because even those documents that focus on how and what Lilly's employees communicated about Cymbalta to Plaintiff Patti Pokorny's doctors may not use the precise combination of Cymbalta- and withdrawal-related terms suggested by Lilly.

Lilly has asserted that its proposed search terms are adequate because, among other things, they have "been used in related cases in this litigation." Email from Emily Ullman to Meredith Gray, *et al.* (Sept. 22, 2015), Ex. B. However, Lilly has not identified any other Cymbalta withdrawal case in which the parties agree that the search terms Lilly proposes here are adequate with respect to identifying relevant documents in sales representatives' custodial files.[6] Nor has Lilly tested its proposed search terms against a sample custodial file.

Thus, not only has Lilly failed to demonstrate that search terms are necessary, Lilly has also failed to demonstrate that its proposed search terms are adequate to capture relevant documents. Plaintiffs should not be required to play a guessing game at which search terms will locate the relevant documents in Lilly's possession.

**D.     Courts Routinely Order Production of Complete Sales Representative Custodial Files.**

Courts routinely find that the custodial files of pharmaceutical sales representatives are discoverable and order their production without the use of limiting search terms. For example, in *Cunningham v. Smithkline Beecham*, the court granted a request for the "*complete* sales files" despite the fact that the sales representatives presumably detailed other products besides Paxil. 255 F.R.D. at 479 (emphasis added). In another case involving a prescription drug where geographic limitations were in dispute, the court concluded that not only were the sales call notes pertaining to the plaintiff's healthcare provider relevant, but the sales call notes from *all* sales representatives across the country were relevant, because "other sales call notes could also lead a

---

[6] Plaintiffs' concern that Lilly's proposed search terms are inadequate is not unfounded. Lilly is currently subject to a motion for sanctions for allegedly manipulating search terms to avoid production of highly relevant documents in related Cymbalta withdrawal litigation. *See* Minutes of In Chambers Order, *Saavedra v. Eli Lilly & Company*, No. 2:12-cv-9366 (C.D. Cal. Aug. 17, 2015), Dkt. 187 (denying default judgment but reserving ruling on other requested sanctions), Ex. E.

jury to infer that [the defendant's] campaign was so pervasive that any doctor, including

Plaintiff's, would fail to heed any warning about the product." *Baker v. Bayer Healthcare*

*Pharm. Inc.*, No. 13-CV-00490, 2014 WL 5513854, at *2 (N.D. Cal. Oct. 31, 2014). And in *In re*

*Levaquin Products Liability Litigation*, the court ordered the defendants to produce "any

discoverable documents in the possession of sales representatives who called on bellwether

plaintiffs' prescribing doctors, regardless of whether those sales representatives will be

deposed." MDL No. 08-1943, 2009 WL 10424741, at *3 (D. Minn. Nov. 25, 2009).

In fact, in another case involving Lilly, the court held that the files of not only sales

representatives but also district managers are relevant to claims of injury from a pharmaceutical

drug:

> Discovery concerning the Managers is important because it is directed to
> establishing the Defendants' internal communications about its knowledge, as
> well as the role that such knowledge played in the Defendants' communications
> with prescribing physicians. Moreover, information in the files of the Managers
> has the potential to be relevant to the Plaintiffs' ability to respond to what is
> expected to be a central affirmative defense at trial: the learned intermediary
> doctrine. These issues are central to the [Plaintiffs'] case.

*In re Actos (Pioglitazone-Prods. Liab. Litig.)*, No. 6:11-MD-2299, 2013 WL 4776346, at *4

(W.D. La. Sept. 3, 2013) (in case involving Lilly as well as another pharmaceutical

manufacturer, ordering production of thirty-seven sales-force custodial files, including those of

fourteen district managers). Lilly's district managers are actively involved in sales

representatives' communications with doctors.[7] *See Schaefer-LaRose v. Eli Lilly & Co.*, 663 F.

---

[7] For this reason, Plaintiffs have served an interrogatory on Lilly asking for the names of the
district managers who supervised the sales representatives who communicated directly with
Plaintiff Patti Pokorny's doctors. Plaintiffs expect to seek production of certain managers'
custodial files in addition to the thirteen sales representatives' files currently requested.

Supp. 2d 674, 679 (S.D. Ind. 2009) (in employment case regarding sales representative at Lilly, describing district managers' supervision of sales calls in the field).[8]

None of these courts ordered the production of sales representatives' custodial files using search terms. Use of search terms is only warranted when the set of potentially relevant documents is so voluminous that reviewing the document set is otherwise unduly burdensome. For example, one case in which the court did permit the defendant pharmaceutical manufacturer to use search terms to search sales representatives' custodial files took place in the context of an MDL, involving fifty-seven plaintiffs and hundreds of sales representatives. *See Shipley v. Forest Labs.*, No. 1:06–cv–00048, 2014 WL 4270939, at *1 (D. Utah Aug. 29, 2014).[9]

Here, there is no MDL, and only thirteen custodial files have been requested, all of them limited to a specific date range. In fact, only four of the requested files cover a period of time longer than thirteen months. Plaintiffs' request has been narrowed to the time periods in which Lilly's employees were communicating directly with Plaintiff Patti Pokorny's doctors about Cymbalta prior to or during those doctors' treatment of Plaintiff. Because Lilly has not shown

---

[8] As the *Schaefer-Rose* court explained: "Periodically, Ms. Schaefer–LaRose's district managers conducted 'ride-alongs' to observe or participate in sales calls on the basis of which Ms. Schaefer–LaRose's performance would later be evaluated and she would be advised as to future improvements. The frequency of the ride-alongs was dependant [*sic*] upon the individual managers, but they occurred generally from once every two weeks to once every quarter. In addition to the ride-alongs, Ms. Schaefer–LaRose participated in conference calls with her district manager approximately once a week or once every two weeks, during which meetings topics such as 'a change in strategy for the message' or 'a change in labeling' were discussed." *Schaefer-LaRose v. Eli Lilly & Co.*, 663 F. Supp. 2d 674, 679 (S.D. Ind. 2009).

[9] When an individual plaintiff sought additional production of custodial files outside of the MDL, the district court ordered the defendant pharmaceutical manufacturer to run a "preliminary search" using search terms because of the "allegedly low likelihood that responsive ESI exists," *Shipley v. Forest Labs.*, No. 1:06–cv–00048, 2014 WL 4270939, at *4 (D. Utah Aug. 29, 2014), given that the defendant had already produced call notes and sales representatives had not received company email accounts until months after the injury at issue occurred, *see id.* at *3.

that its burden of assembling and producing the custodial exceeds that allowed by the Federal Rules of Civil Procedures, Lilly must assemble and produce its employees' custodial files.

## V.    CONCLUSION

Plaintiffs respectfully ask the Court to compel Lilly to contact the thirteen Lilly sales representatives, listed above, to gather any responsive documents in their possession, and to thereafter assemble and produce complete custodial files of these thirteen Lilly representatives, limited to the respective date ranges listed herein. In the alternative, Plaintiffs respectfully ask the Court to compel Lilly to contact the following three Lilly sales representatives to gather any responsive documents in their possession, and to thereafter assemble and produce complete custodial files limited to the respective date ranges listed: Jason Bott for the time period of October 2004 – November 2005; Susan Salas for the time period of January 2007 – October 2012; and Brooke Adams for the time period of November 2011 – June 2013, after the production of which, the parties shall meet and confer as to how Defendant Lilly can identify and produce documents from the complete files of the remaining ten sales representatives.

Dated: October 1, 2015                KELLER ROHRBACK L.L.P.


By: /s/ Meredith Gray
      Michael Woerner, *admitted Pro Hac Vice*
      mwoerner@kellerrohrback.com
      Meredith Gray, *admitted Pro Hac Vice*
      mgray@kellerrohrback.com
      1201 Third Ave., Suite 3200
      Seattle, Washington 98101
      Telephone: (206) 623-1900
      Facsimile: (206) 623-3384

      Khesraw Karmand, *admitted Pro Hac Vice*
      kkarmand@kellerrohrback.com
      KELLER ROHRBACK L.L.P.
      1129 State Street, Suite 8
      Santa Barbara, CA 93101
      Telephone: (805) 456-1496
      Facsimile: (805) 456-1497

      David Friend, Esq.
      dfriend@hkllp.com
      HISSEY KIENTZ, LLP
      One Arboretum Plaza
      9442 Capital of Texas Hwy N., Suite 400
      Austin, TX 78759
      Telephone: (512) 320-9100
      Facsimile: (512) 320-9101

      ***Attorneys for Plaintiffs Patti Pokorny and
Christopher Pokorny***

## CERTIFICATE OF CONFERENCE

I certify that I communicated with defense attorney Emily Ullman by letter dated September 18, 2015, email dated September 22, 2015, and by telephone and letter on September 25, 2015, regarding Plaintiffs' request that Lilly produce certain employees' files. The parties' disagreement concerns the adequacy of Lilly's proposal for identifying potentially relevant documents from these files.

/s/ Meredith Gray
Meredith Gray

## CERTIFICATE OF SERVICE

I certify that on October 1, 2015, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send electronic notification of such filing to all counsel of record.

/s/ Meredith Gray
Meredith Gray