IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

PATTIE POKORNY AND CHRISTOPHER
POKORNY (H/W),

       Plaintiffs,

  v.

ELI LILLY AND COMPANY, an Indiana
Corporation,

       Defendant.

Case No. 4:14-cv-02960

**PLAINTIFFS' MOTION TO COMPEL THE PRODUCTION OF
SALES REPRESENTATIVES' CUSTODIAL FILES
AND MEMORANDUM OF LAW IN SUPPORT**

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| I. | Introduction | 1 |
| II. | The Discovery Requests and Objections at Issue | 2 |
| III. | Legal Standard | 6 |
| IV. | Argument | 7 |
| | A. The Discovery Sought Is Necessary and Relevant to the Parties' Claims and Defenses. | 7 |
| | B. Lilly Has Not Demonstrated Undue Burden. | 10 |
| | C. Courts Routinely Order Production of Sales Representative Custodial Files. | 11 |
| V. | Conclusion | 12 |

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Actos (Pioglitazone-Prods. Liab. Litig.)*,
   No. 6:11-MD-2299, 2013 WL 4776346 (W.D. La. Sept. 3, 2013)..........................14

*Baker v. Bayer Healthcare Pharm. Inc.*,
   No. 13-CV-00490, 2014 WL 5513854 (N.D. Cal. Oct. 31, 2014) .........................14

*Cunningham v. Smithkline Beecham*,
   255 F.R.D. 474................................................................................................14

*In re Enron Corp. Sec., Derivative & ERISA Litig.*,
   623 F. Supp. 2d 798 (S.D. Tex. 2009) ...............................................................9

*Export Worldwide, Ltd. v. Knight*,
   241 F.R.D. 259 (W.D. Tex. 2006) ....................................................................10

*Gauthier v. Union Pac. R.R. Co.*,
   No. 1:07-CV-12, 2008 WL 2467016 (E.D. Tex. June 18, 2008) ...........................10

*Hexum v. Eli Lilly & Co.*,
   No. 2:13-CV-02701, 2015 WL 4064633 (C.D. Cal. June 19, 2015).......................10

*In re Levaquin Prods. Liability Litig.*,
   MDL No. 08-1943, 2009 WL 10424741 (D. Minn. Nov. 25, 2009) .......................12

*Smith v. DeTar Hosp. LLC*,
   No. V-10-83, 2011 WL 6217497 (S.D. Tex. Dec. 14, 2011) .................................10

*Spiegelberg Mfg., Inc. v. Hancock*,
   No. 3-07-CV-1314, 2007 WL 4258246 (N.D. Tex. Dec. 3, 2007)..........................10

*Vann v. Mattress Firm*,
   No. H-12-3566, 2014 WL 1365943 (S.D. Tex. Apr. 7, 2014).....................10, 13, 14

**Other Authorities**

Fed. R. Civ. P. 26(b) ..........................................................................9, 10, 13

Fed. R. Civ. P. 37(a)(1)................................................................................10

# I. INTRODUCTION

Plaintiffs Patti and Christopher Pokorny respectfully request that the Court compel Defendant Eli Lilly and Company ("Lilly") to produce the custodial files of four of Lilly's sales representatives who communicated with two of Plaintiff Patti Pokorny's treating doctors about Lilly's prescription drug Cymbalta.[1] In this case, Plaintiffs have alleged that Lilly, despite having full knowledge of the risks, did not adequately warn patients or doctors that stopping Cymbalta treatment could cause severe withdrawal symptoms, and did not provide patients or doctors with guidance on how to safely stop taking Cymbalta.

Plaintiff Patti Pokorny sought treatment from two doctors for the withdrawal symptoms she suffered after she stopped Cymbalta treatment. Acting on behalf of Lilly, the four Lilly sales representatives at issue visited these two doctors a total of 110 times to promote Cymbalta. Thus, the information in these sales representatives' custodial files is highly relevant to Plaintiffs' claims that Lilly misrepresented the risk of withdrawal symptoms to Plaintiffs and Plaintiff Patti Pokorny's doctors.

Plaintiffs asked Lilly to produce these custodial files to learn what information Lilly's sales representatives told Plaintiff Patti Pokorny's doctors about stopping Cymbalta treatment and the withdrawal symptoms Plaintiff Patti Pokorny might suffer as a result. Plaintiffs contend that these custodial files are relevant and that Lilly's burden to produce them is minimal. Lilly, however, has refused to produce these custodial files, and has not offered a valid reason why it should not produce them. Plaintiffs therefore seek an order compelling Lilly to produce them.

---

[1] Fact discovery closed on January 7, 2016, "except for the itemized exceptions as set forth in parties' motion for leave", which includes the resolution of the parties' disagreement concerning the production and possible depositions of the four sales representatives at issue in Plaintiffs' motion to compel. Amended Scheduling/Docket Control Order, Jan. 4, 2016 (Dkt. 31); *see* Joint Motion to Amend Scheduling Order, Dec.31, 2015 (Dkt. 30). Since this motion is brought after the close of discovery, resolution will occur following the close of discovery. Accordingly, Plaintiffs request that any order granting this motion to compel allow for the proposed discovery to be conducted out-of-time.

## II. THE DISCOVERY REQUESTS AND OBJECTIONS AT ISSUE

Nearly one year ago, on February 18, 2015, Plaintiffs served Lilly with their First Requests for Production ("RFP"). Plaintiffs requested production of the complete custodial file of each pharmaceutical sales representative who promoted Cymbalta to Plaintiff Patti Pokorny's doctors, and separately requested production of all documents that these sales representatives gave or showed to Plaintiff's doctors. Lilly objected that the requests were overbroad and unduly burdensome, and with respect to the request for documents shown or given to doctors, Lilly responded that "that the information in its sales database does not indicate which marketing materials or other documents were shown to particular medical professionals." Declaration of Meredith Gray ("Gray Decl."), Exh. A at 68. Lilly did, however, agree to produce, in response to a different request for production, "documents tracking sales calls to [Plaintiff Patti Pokorny's doctors] that can be located through a reasonably diligent search, to the extent such documents or sales calls exist." *Id.* at 63.[2]

Lilly subsequently produced sales call tracking spreadsheets that identified eighteen sales representatives who visited five of Plaintiff Patti Pokorny's doctors a combined total of 357 times to promote Cymbalta. Based on Lilly's objections to Plaintiffs' RFPs, and the information about the sales representatives' calls on Plaintiff Patti Pokorny's doctors set forth in the sales call tracking spreadsheets, by letter dated September 18, 2015, Plaintiffs narrowed their request to the custodial files of only thirteen sales representatives. Gray Decl., Exh. C. Specifically, Plaintiffs'

---

[2] On February 18, 2015, Plaintiffs served their First Set of Requests for Production on Lilly, which included RFP Nos. 91 and 95 relating to the custodial files of sales representatives who visited Dr. Kathryn Ziegler, among others. On September 18, 2015, Lilly noticed the deposition of an additional treating doctor, Dr. Jessica Brooks Anderson. That same day, Plaintiffs served their Second Set of Requests for Production on Lilly for the custodial files of sales representatives who visited Dr. Anderson. Plaintiffs' RFP Nos. 112 and 116 are otherwise identical to RFP Nos. 91 and 95. Lilly's responses to Plaintiffs' RFP Nos. 91 and 112 are also otherwise identical, as are Lilly's objections and responses to Plaintiffs' RFP Nos. 95 and 116. Plaintiffs' First and Second RFPs and Lilly's objections and responses to them are attached to the Gray Declaration as Exhs. A-B.

narrowed request sought only the custodial files of sales representatives who visited Plaintiff Patti Pokorny's doctors before or during the doctors' treatment of her with Cymbalta, and excluded the custodial files of sales representatives who visited Plaintiff Patti Pokorny's doctors only after she had stopped treatment with Cymbalta or was no longer treated by that doctor. *See id.*

Thereafter, counsel for the parties met and conferred on several occasions in an attempt to reach an agreement on Lilly's production of the requested custodial files. In a telephonic meet and confer between parties' counsel on September 25, 2015, Lilly insisted that Plaintiffs agree to a narrow set of search terms formulated by Lilly without Lilly having reviewed a single sales representative file or having run the proposed search terms across any documents to determine whether they would actually capture and not exclude relevant documents. Plaintiffs proposed that Lilly either broaden the search terms or allow Plaintiffs to sample several sales representative custodial files to ensure that Lilly's proposed search terms were adequate. Gray Decl., Exh. D. Lilly refused. Having reached on impasse, on October 1, 2015, Plaintiffs filed their motion to compel the production of the thirteen Lilly sales representatives' custodial files. (Dkt. 23).

On October 29, 2015, counsel spoke by telephone and resumed negotiations based on a broader set of search terms agreed upon by Lilly and plaintiffs in a related Cymbalta withdrawal litigation, and extended the reply briefing deadline for Plaintiffs' motion to compel. *See* Gray Decl., Exh. E.

Over the weeks that followed, counsel engaged in extensive telephonic and written meet and confers. In a telephonic meet and confer on November 5, 2015, counsel agreed that Lilly would run an agreed-upon set of search terms across the archived emails of its sales

representatives, after which Lilly would review the documents for relevance and then produce relevant documents to Plaintiffs. Gray Decl., Exh. F. Counsel spoke again on November 18, 2015. Plaintiffs objected to Lilly's relevance review on the basis that the parties' agreed-upon search terms are narrowly tailored such that all documents identified by the search terms are likely to be relevant. Additionally, all documents produced are subject to the protective order entered in this case.

Plaintiffs objected that Lilly's relevance review is, thus, discretionary and, in Plaintiffs' view, unnecessary. Lilly, however, refused to produce any documents without first performing a relevance review. With the January 7, 2016 discovery cutoff fast approaching, Plaintiffs gave Lilly the go-ahead to begin reviewing and producing documents. One month later, in late November 2015, Lilly still had not produced any documents. During counsels' telephonic meet and confers, Lilly cited the length of time it needed to perform the searches and its relevance review.

On November 25, 2015, two days after Plaintiffs filed their reply in support of their motion to compel (Dkts. 26 & 27), counsel met and conferred by telephone and agreed (1) that Lilly would produce the custodial files of three of the thirteen sales representatives (Jason Bott, Kevin Gray, and Susanne Salas) by December 24, 2015, in advance of their depositions; and (2) that counsel would continue to meet and confer concerning the production of the outstanding custodial files and potential depositions of the remaining ten sales representatives. The parties memorialized their agreement in a joint stipulation filed with the Court the same day. (Dkt. 28). Pursuant to this joint stipulation, the Court then denied Plaintiffs' motion to compel as moot. (Dkt. 29).

On December 21, 2015, Lilly produced 515 documents from the custodial files of the three sales representatives, Jason Bott, Kevin Gray, and Susanne Salas. On January 7, 2016, Lilly produced additional two documents from the three custodial files.

During December, the parties continued to meet and confer concerning the production of the custodial files of the remaining ten sales representatives requested by Plaintiffs. Lilly objected that the custodial files of the sales representatives who visited two of Plaintiff Patti Pokorny's treating doctors were not relevant because Lilly did not intend to pursue these doctors' depositions and because these doctors only treated Plaintiff Patti Pokorny while she was suffering withdrawal symptoms, but did not prescribe Cymbalta or oversee her tapering regimen. Gray Decl., Exh. G at 2. Lilly objected to production of these custodial files as burdensome and time-consuming, and also objected to any additional sales representative depositions. *Id.* at 3.

Plaintiffs subsequently narrowed their requests, again, by withdrawing their request for the custodial files of five of the remaining ten sales representatives at issue. *Id.* at 2. However, Plaintiffs maintained their request for the custodial files of five sales representatives—Brook Finlinson, Brooke Adams, Marcus Julien, Traci Korkowski, and Rosalind Sobosle—on the basis that these sales representatives visited two of Plaintiff Patti Pokorny's treating doctors more than 100 times before and/or during the time these doctors treated Plaintiff for Cymbalta withdrawal symptoms. *Id.* Additionally, Plaintiffs reserved their right to depose any or all of the sales representatives, in accordance with the Federal Rules. *Id.*

Lilly then agreed to produce the custodial file of Brook Finlinson, but maintained its objections to producing the custodial files of Brooke Adams, Marcus Julien, Traci Korkowski, and Rosalind Sobosle. *Id.* at 1. Counsel spoke again on December 30, 2015. During that call, Plaintiffs proposed that they would withdraw their request for the remaining four sales

5

representatives' custodial files if Lilly would stipulate to Plaintiff Patti Pokorny having suffered withdrawal symptoms as a result of stopping Cymbalta treatment. Lilly's counsel declined, and counsel agreed they were at an impasse with respect to these four sales representatives' custodial files, and that Plaintiffs should bring this issue before the Court.

On December 31, 2015, the parties filed a joint stipulation informing the Court of the status of the remaining discovery issues raised by Plaintiffs' first motion to compel, specifically: (1) that Lilly had produced the custodial files of three sales representatives (Jason Bott, Kevin Gray, and Susanne Salas) and provided a timeframe for their availability for deposition; (2) that Lilly would produce the custodial file of Brook Finlinson by February 15, 2016, but that it disputed Plaintiffs' right to take her deposition; (3) that Plaintiffs had withdrawn their request for the custodial file and deposition of one sales representative (Sara Lea), and conditionally withdrawn their request for the custodial files and depositions of four sales representatives (Amelia Jeffries, Amy Keel, Brendon Radomski, and Nicole Daly); and (4) that, since the parties continued to dispute whether Lilly must produce the custodial files of Brooke Adams, Marcus Julien, Traci Korkowski, and Rosalind Sobosle, Plaintiffs must file any motion for the production of these custodial files by January 22, 2016. (Dkt. 30).

### III. LEGAL STANDARD

Fed. R. Civ. P. 26(b) permits litigants to obtain discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense[.]" Fed. R. Civ. P. 26(b)(1). Accordingly, "relevancy is construed liberally[.]" *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 623 F. Supp. 2d 798, 838 (S.D. Tex. 2009).

Under Rule 37, "a party may move for an order compelling disclosure or discovery." Fed. R. Civ. P. 37(a)(1). The moving party meets its burden to show that "[m]aterials and information are discoverable if they are 'relevant to any party's claim or defense'" *Smith v. DeTar Hosp.*

*LLC*, No. V-10-83, 2011 WL 6217497, at *2 (S.D. Tex. Dec. 14, 2011) (quoting Fed. R. Civ. P. 26(b)(1) and citing *Export Worldwide, Ltd. v. Knight*, 241 F.R.D. 259, 263 (W.D. Tex. 2006)). "Once the moving party establishes that the materials requested are within the scope of permissible discovery, the burden shifts to the party resisting discovery to show why the discovery is irrelevant, overly broad, or unduly burdensome or oppressive, and thus should not be permitted." *Vann v. Mattress Firm*, No. H-12-3566, 2014 WL 1365943, at *1 (S.D. Tex. Apr. 7, 2014) (citing *Spiegelberg Mfg., Inc. v. Hancock*, No. 3-07-CV-1314, 2007 WL 4258246, at *1 (N.D. Tex. Dec. 3, 2007), and *Gauthier v. Union Pac. R.R. Co.*, No. 1:07-CV-12, 2008 WL 2467016, at *3 (E.D. Tex. June 18, 2008)).

## IV. ARGUMENT

### A. The Discovery Sought Is Necessary and Relevant to the Parties' Claims and Defenses.

In defending similar claims in other Cymbalta withdrawal cases, Lilly has emphasized plaintiffs' doctors' knowledge of Cymbalta. *See, e.g.*, *Hexum v. Eli Lilly & Co.*, No. 2:13-CV-02701, 2015 WL 4064633, at *13-15 (C.D. Cal. June 19, 2015) (in order denying summary judgment, discussing proximate cause and Lilly's evidence of prescribing doctor's knowledge of Cymbalta's risks). Moreover, courts and juries deciding other Cymbalta withdrawal cases have focused on whether plaintiffs sought treatment for their withdrawal symptoms and whether plaintiffs were diagnosed with Cymbalta withdrawal. Thus, Lilly's communications with all of Plaintiff Patti Pokorny's treating doctors—not just the prescribing doctor or the doctor who oversaw her tapering regimen—are relevant to Plaintiffs' claims and Lilly's defenses. Plaintiffs' review of the three sales representatives' files Lilly has produced thus far has confirmed that the custodial files are relevant and contain information the sales

representatives communicated to Plaintiff Patti Pokorny's treating doctors about Cymbalta treatment.

However, Lilly continues to refuse to produce the custodial files of four sales representatives, despite their clear relevance. The following chart summarizes the sales representatives' contacts with two of Plaintiff Patti Pokorny's treating doctors, Dr. Anderson and Dr. Ziegler:

| Sales Representative | Doctor | Visits | Dates | Notes |
|---|---|---|---|---|
| Brooke Adams | Dr. Anderson | 21 | October 2011 – June 2013 | Including visits before Plaintiff Patti Pokorny's withdrawals |
| | Dr. Ziegler | 19 | November 2011 – June 2013 | Including visits before and during Plaintiff Patti Pokorny's withdrawals |
| Marcus Julien | Dr. Ziegler | 9 | October 2012 – March 2013 | Including visits before and during Plaintiff Patti Pokorny's withdrawals |
| | Dr. Anderson | 6 | October 2012 – March 2013 | Including visits before and during Plaintiff Patti Pokorny's withdrawals |
| Traci Korkowski | Dr. Ziegler | 29 | July 2009 – September 2011 | During Dr. Ziegler's treatment of Plaintiff Patti Pokorny with Cymbalta |
| | Dr. Anderson | 4 | September 2010 – March 2011 | During Dr. Ziegler's treatment of Plaintiff Patti Pokorny with Cymbalta |
| Rosalind Sobosle | Dr. Ziegler | 22 | December 2009 – December 2010 | During Dr. Ziegler's treatment of Plaintiff Patti Pokorny with Cymbalta |
| **Total visits:** | | **110** | | |

Lilly has failed to advance an argument to undermine the relevance of any of these four custodial files. Lilly objected to their production on the basis that it is not seeking the depositions of the two doctors on whom these sales representatives called, and that these two doctors did not prescribe Cymbalta to Plaintiff Patti Pokorny, nor oversee her tapering regimen, but "appear to

have done nothing more than record the symptoms reported to them by [Plaintiff Patti Pokorny]", Gray Decl., Exh. G at 1. Lilly's objections notwithstanding, these custodial files are clearly relevant for two reasons.

First, the mere fact that Lilly is not seeking the depositions of the two doctors on whom these sales representatives called, and that, in turn, Plaintiffs may determine not to pursue the depositions of these sales representatives, does not render the sales representatives' custodial files irrelevant to Plaintiffs' claims. *See In re Levaquin Prods. Liability Litig.*, MDL No. 08-1943, 2009 WL 10424741, at *3 (D. Minn. Nov. 25, 2009) (ordering defendants to produce "any discoverable documents in the possession of sales representatives who called on bellwether plaintiffs' prescribing doctors, regardless of whether those sales representatives will be deposed").[3]

Second, Lilly's primary means of communication with doctors is through its sales representatives. These four sales representatives visited two of Plaintiff Patti Pokorny's treating doctors 110 times to promote Cymbalta. Considering that Plaintiffs' claims focus on what Lilly both did and did not tell patients and their doctors, that Lilly's anticipated defenses focus on the treating doctors' knowledge of Cymbalta and its risks, and that courts and juries have considered plaintiffs' treatment and diagnosis of Cymbalta withdrawal, discovery of these four sales representatives' 110 communications with Plaintiff Patti Pokorny's doctors falls solidly under

---

[3] Lilly has objected to additional depositions of sales representatives, arguing that the depositions of Kevin Bott, Jason Gray, and Susanne Salas are "more than reasonable" and "should provide [Plaintiffs] with an appropriate sample of the training that the representatives received." Gray Decl., Exh. G at 3. Plaintiffs doubt that they will want to depose any or all of the five other sales representatives (Brook Finlinson, Brooke Adams, Marcus Julien, Traci Korkowski, and Rosalind Sobosle), but have reserved their right to do so following their review of the custodial files. *Id.* at 2. Further, Plaintiffs note that they have not reached their deposition limit as set forth in the Federal Rules. *Id.*

the broad scope of discovery contemplated by Rule 26 and is highly relevant to Plaintiffs' claims.

Lilly's sales representatives communicated directly with Plaintiff Patti Pokorny's doctors over 100 times about Cymbalta both prior to and during the time that she sought their treatment for Cymbalta withdrawal. What the representatives said (or didn't say), especially with respect to a tapering regimen or possible alleviation of withdrawal symptoms, is relevant to Plaintiffs' claims.

**B.     Lilly Has Not Demonstrated Undue Burden.**

It is Lilly's burden to demonstrate that the production Plaintiffs request is unduly burdensome. *See Vann*, 2014 WL 1365943 at *1. Because Lilly has not met this burden, it is obligated under the Federal Rules to produce relevant documents responsive to Plaintiffs' request.

In a December 21, 2015 email, Lilly's counsel refused to produce the custodial files of the remaining sales representatives on the basis that doing so posed a "significant burden" and would "make it very difficult to finish this discovery in a reasonable time period." Gray Decl., Exh. G at 2. Earlier on in the meet and confer process, during counsels' November 18, 2015 telephonic meet and confer, Plaintiffs argued that Lilly need not conduct a voluntary, unnecessary, and time-consuming relevance review of its productions, as the parties' agreed-upon search terms are narrowly tailored such that all documents identified by the search terms are likely to be relevant, and moreover, all documents produced are subject to the protective order entered in this case. Lilly insisted, however, that its relevance review was non-negotiable.

To date, Lilly has produced 517 documents representing the custodial files of three of its sales representatives. Documents were first identified using the parties' agreed-upon search terms, after which Lilly reviewed the documents for relevance. Assuming that Lilly is not

excluding an exorbitant amount of potentially responsive documents on the basis of relevance, Lilly has not shown that reviewing the documents identified by the parties' agreed-upon search terms from the custodial files of these four additional sales representatives would constitute an undue burden, as contemplated by the Federal Rules. *See Vann*, 2014 WL 1365943 at *1.

Thus, Lilly has not fulfilled its obligations to show that the requested discovery exceeds the scope of discovery permitted by the Federal Rules of Civil Procedure.

C.     **Courts Routinely Order Production of Sales Representative Custodial Files.**

Courts routinely order production of pharmaceutical sales representatives' custodial files. *See, e.g.*, *Cunningham v. Smithkline Beecham*, 255 F.R.D. 474, 479 (granting request for "complete sales files"); *Baker v. Bayer Healthcare Pharm. Inc.*, No. 13-CV-00490, 2014 WL 5513854, at *2 (N.D. Cal. Oct. 31, 2014) (finding that sales call notes pertaining to the plaintiff's healthcare provider were relevant, as well as those from *all* sales representatives across the country, because "other sales call notes could also lead a jury to infer that [the defendant's] campaign was so pervasive that any doctor, including Plaintiff Patti Pokorny's, would fail to heed any warning about the product") (emphasis added); and *In re Actos (Pioglitazone-Prods. Liab. Litig.)*, No. 6:11-MD-2299, 2013 WL 4776346, at *4 (W.D. La. Sept. 3, 2013) (in case involving Lilly as well as another pharmaceutical manufacturer, ordering production of thirty-seven sales-force custodial files, including those of fourteen district managers).

Here, only four additional custodial files have been requested, for a total of eight, all of them limited to a specific date range. Plaintiffs' request has been narrowed to the time periods in which Lilly's employees were communicating directly with Plaintiff Patti Pokorny's doctors about Cymbalta prior to or during those doctors' treatment of Plaintiff. Because Lilly has not shown that its burden of assembling and producing the custodial files exceeds that allowed by

the Federal Rules of Civil Procedures, Lilly must assemble and produce its employees' custodial files.

## V.     CONCLUSION

Plaintiffs respectfully ask the Court to compel Lilly to produce the custodial files of these four Lilly representatives, using the parties' agreed-upon search terms, and limited to the respective date ranges listed below:

| Sales Representative | Doctor(s) | Dates |
|---|---|---|
| Brooke Adams | Dr. Anderson Dr. Ziegler | October 2011 – June 2013 |
| Marcus Julien | Dr. Ziegler Dr. Anderson | October 2012 – March 2013 |
| Traci Korkowski | Dr. Ziegler Dr. Anderson | July 2009 – September 2011 |
| Rosalind Sobosle | Dr. Ziegler | December 2009 – December 2010 |

Since this motion is brought after the close of discovery on agreement of the parties and by leave of Court, resolution will occur following the close of discovery. Accordingly, Plaintiffs respectfully request that any order granting this motion to compel allow for the proposed discovery to be conducted out-of-time.

Dated: January 22, 2016					KELLER ROHRBACK L.L.P.


By: /s/ Meredith Gray
    Michael Woerner, *admitted Pro Hac Vice*
    mwoerner@kellerrohrback.com
    Meredith Gray, *admitted Pro Hac Vice*
    mgray@kellerrohrback.com
    1201 Third Ave., Suite 3200
    Seattle, Washington 98101
    Telephone: (206) 623-1900
    Facsimile: (206) 623-3384

    Khesraw Karmand, *admitted Pro Hac Vice*
    kkarmand@kellerrohrback.com
    KELLER ROHRBACK L.L.P.
    1129 State Street, Suite 8
    Santa Barbara, CA 93101
    Telephone: (805) 456-1496
    Facsimile: (805) 456-1497

    David Friend, Esq.
    dfriend@hkllp.com
    HISSEY KIENTZ, LLP
    One Arboretum Plaza
    9442 Capital of Texas Hwy N., Suite 400
    Austin, TX 78759
    Telephone: (512) 320-9100
    Facsimile: (512) 320-9101

    ***Attorneys for Plaintiffs Patti Pokorny and Christopher Pokorny***

## CERTIFICATE OF CONFERENCE

      I certify that I communicated with defense attorney Emily Ullman multiple times by telephone, letter, and email between mid-September 2015 and December 31, 2015, regarding Plaintiffs' request that Lilly produce certain employees' custodial files. The parties' disagreement concerns the relevance of these files and Lilly's burden to produce them.

                                                       /s/ Meredith Gray
                                                       Meredith Gray

## CERTIFICATE OF SERVICE

      I certify that on January 22, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send electronic notification of such filing to all counsel of record.

                                                         /s/ Meredith Gray
                                                       Meredith Gray